**Dated: March 4, 2021**

**The following is ORDERED:**



Sarah A Hall
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| LORI BARWICK, | ) | Case No. 19-11787-SAH |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| MELANIE GERLICH, | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. 19-01060-SAH |
| | ) | |
| LORI BARWICK, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

On January 21, 2021, the following matters came on for trial in the captioned adversary

proceeding:

1.    Amended Complaint [Doc. 3], filed on July 3, 2019, by plaintiff Merlanie Gerlich
      ("Plaintiff");

2.    Answer to Complaint [Doc. 4], filed on August 7, 2019, by debtor Lori Barwick
      ("Defendant"); and

3.    Final Pretrial Order [Doc. 29], entered on January 12, 2021 (the "Pretrial Order").

Plaintiff appeared in person and by and through her attorney, Tom Cummings; and Defendant appeared in person *pro se*. The parties presented a story of past friendship gone bad and an assault and battery fueled by alcohol, resulting in acrimonious feelings, ruined lives, and Plaintiff's quest for retribution.

## JURISDICTION

The Court has jurisdiction to hear the trial of this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a), and this is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I). Additionally, the parties have consented to this Court's entry of final orders pursuant to Federal Rules of Bankruptcy Procedure 7008 and 7012.

## BACKGROUND

Plaintiff and Defendant are former friends who liked to go to "Graham Central Station" ("GCS"), a bar and dance hall in Oklahoma City. For unknown reasons, Plaintiff and Defendant had a falling out previously. One evening after their falling out, both visited GCS though they remained separated while inside. Nevertheless, when Plaintiff and her husband left GCS, Defendant and her friends followed them to their car where they pulled Plaintiff out of the car and beat her. Plaintiff sustained significant injuries and was taken to the hospital for treatment.

Plaintiff commenced an action in Oklahoma County District Court (the "State Court Action") against Defendant and others to recover her damages. A judgment was entered against Defendant as to liability as a sanction for her unwillingness to cooperate in discovery. A jury trial was later conducted on damages, and Plaintiff recovered a judgment against Defendant, in

her absence, for $350,000.00 in actual damages, $100,000.00 in punitive damages, and $1,638.02 in costs.  Defendant never appealed or sought to vacate the judgments entered in the State Court Action.

Thereafter, Defendant filed her voluntary petition under chapter 7 of the Bankruptcy Code on May 2, 2019.  Plaintiff then commenced this adversary proceeding seeking to except the judgments obtained in the State Court Action from Defendant's discharge pursuant to 11 U.S.C. § 523(a)(6).[1]

In making the following Findings of Fact and Conclusions of Law, the Court considered:

a.      The Pretrial Order; and

b.      The trial record, including exhibits introduced and admitted by the Court, and the testimony of Plaintiff, her husband Nicholas Gerlich ("Husband"), and Defendant.

The Court found Plaintiff and Husband to be straightforward and credible witnesses.  Defendant was not as credible, giving only general denials and deflecting any blame while having no corroborating witnesses, for which she also took no blame.  Moreover, Defendant focused more on her own hardships before and after the incident rather than the facts of Plaintiff's beating and resulting injuries and Defendant's involvement therein to the detriment of her defense presentation.

## **FINDINGS OF FACT**

1.      On the night of December 11, 2011, Plaintiff, Husband, and Defendant patronized GCS but remained separated due to acrimonious relations and management's request.

---

[1]Unless otherwise indicated, hereafter all references to sections are to the Bankruptcy Code, Title 11 of the United States Code.

2.      After having a good time, Plaintiff and Husband left GCS and went to their vehicle in the parking lot.

3.      Defendant and two friends followed Plaintiff and Husband out of GCS.  They approached Plaintiff as she was entering her vehicle, pulled her out,[2] pushed her to the ground, and beat her.  Plaintiff was hit in the head, stomach, and knee (collectively, the "Beating") and sustained injuries.[3]  Plaintiff Ex. 2.

4.      Plaintiff heard Defendant and the two friends yelling about intentionally targeting and hitting her knee.

5.      Husband took Plaintiff to the emergency room for treatment following the Beating, and Plaintiff later required additional surgery on her injured knee as a result thereof.

6.      Alcohol and animosity between former friends played a role in the Beating of Plaintiff.

7.      Plaintiff brought a personal injury assault and battery lawsuit against Defendant and others in the State Court Action, Case No. CJ-2012-6217 in the District Court of Oklahoma County, Oklahoma (the "State Court").

8.      In the State Court Action, Plaintiff, among others, had been granted an extended deadline to respond to Plaintiff's discovery requests (having failed to timely serve any answers or responses thereto) and was notified by the State Court that judgment on the issue of liability would be entered against her as a sanction if she failed to timely comply.

---

[2]Husband witnessed Defendant pulling Plaintiff out of the car but was then distracted by Defendant's then-husband and was unable to see the Beating (defined below).

[3]Plaintiff had knee surgery only three months prior to the Beating, and Defendant was aware of Plaintiff's surgery.

Plaintiff Ex. 1, State Court Action Journal Entry of Judgment entered December 18, 2015.

9.   Defendant did not comply, and on December 18, 2015, a Journal Entry of Judgment was entered on Plaintiff's motion for sanctions in the State Court Action (the "Liability Judgment") finding Defendant liable for Plaintiff's injuries.  Plaintiff Ex. 1, State Court Action Journal Entry of Judgment entered December 18, 2015.

10.  With Defendant's liability established, the State Court scheduled a trial on the issue of damages.  Defendant was represented in the State Court Action by counsel, Robert P. Moore, Jr. ("Moore").  However, on the first date set for the damages trial, Moore was granted leave to withdraw as attorney for Defendant and her then-husband.[4]  Trial on damages was consequently continued to August 27, 2018, so Defendant and her then-husband could hire new counsel.  Plaintiff Ex. 1, State Court Action, Court Minute dated June 4, 2018.

11.  On August 27, 2018, a jury trial on damages was conducted in the State Court Action with Plaintiff and her counsel present and Defendant's then-husband also present. Defendant did not appear or participate in the trial on damages.  Plaintiff Ex. 1, State Court Action Journal Entry of Judgment for Damages entered December 14, 2018.

---

[4]Subsequently, Moore filed a motion to withdraw stating he had been unable to remain in contact with Defendant and her then-husband, they had failed to follow his advice, and they had been uncooperative in assisting in their defense on this matter.  Plaintiff Ex. 1, State Court Action Motion to Withdraw, filed on August 10, 2018.

12.    As a result of the jury trial, at which Plaintiff called witnesses and presented documentary

evidence, a jury verdict was rendered in favor of Plaintiff and against Defendant, among

others, as follows:

> Jury finds clear and convincing evidence Defendants acted in
> reckless disregard of the rights of others and Defendants acted
> intentionally and with malice towards others; Jury finds in favor
> of Plaintiff in the amount of $350,000.00 for actual damages . . .
> and sets punitive damages at $100,00.00.

State Court Action Docket Entry dated August 27, 2018.

13.    A Journal Entry of Judgment for Damages was entered in the State Court Action on

December 14, 2018 (the "Damages Judgment"), against Defendant, among others, and in

favor of Plaintiff as follows:

> Three Hundred Fifty Thousand Dollars ($350,000.00) actual
> damages with statutory pre-judgment interest thereon at the rate
> of .31 % from October 2, 2014, which date is two (2) years after
> the date of the filing of the Plaintiff's Petition herein, October 2,
> 2012, until the date of the filing of this Order, and with statutory
> post-judgment interest thereon at the rate of 5.75% from the date
> of the filing of this Order until paid, pursuant to 12 O.S. §727.1.
> Judgment is further rendered in favor of the Plaintiff, Melanie
> Gerlich, and against the Defendants Lori Frair (now known as Lori
> Barwick) . . . for One Hundred Thousand Dollars ($100,000.00)
> punitive damages with statutory interest thereon at the rate 5.75%
> from the date of the filing of this Order until paid, pursuant to
> 12 O.S. §727.1, for all of which let execution issue.

Plaintiff Ex. 1, State Court Action Journal Entry of Judgment entered December 14,

2018.

14.    In January 2019, the State Court also awarded $1,638.02 for costs related to the action

(the "Costs Judgment").  Plaintiff Ex. 1, State Court Action Journal Entry of Judgment

for Costs entered on January 18, 2019 (the Liability Judgment, the Damages Judgment,

and the Costs Judgment, collectively the "State Court Judgments").

15.    Defendant never appealed or sought reconsideration or vacation of the State Court

Judgments.  State Court Docket generally.[5]

16.    Defendant then filed a voluntary petition under chapter 7 of the Bankruptcy Code in the

Western District of Oklahoma on May 2, 2019.

17.    Plaintiff filed her Amended Complaint herein on July 3, 2019.

## APPLICABLE CODE PROVISION

Section 523(a)(6) provides as follows:

a)    A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

(6)    for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

## CONCLUSIONS OF LAW

"[A] central purpose of the [Bankruptcy] Code is to provide a procedure by which certain

insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new

opportunity in life with a clear field for future effort, unhampered by the pressure and

discouragement of preexisting debt.'"  Grogan v. Garner, 498 U.S. 279, 286 (1991) (quoting

Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934)).  But a completely fresh start is limited to the

---

[5]It is well established a court may take judicial notice of its own records as well as records of other courts, particularly in closely related cases.  Hutchinson v. Hahn, 402 F. App'x 391, 394-95 (10th Cir. 2010) (citing St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979)); Cornforth v. Fidelity Inv., 2017 WL 650132, at *2 (W.D. Okla. Feb. 16, 2017). Federal courts may take judicial notice of proceedings in other courts if those proceedings have a direct relation to the matters at issue.  St. Louis Baptist Temple, 605 F.2d at 1172.

"'honest but unfortunate debtor.'" Grogan, 498 U.S. at 286-87 (quoting Local Loan Co., 292 U.S. at 244). Section 523(a) reflects Congress' decision to exclude certain categories of debts from a debtor's discharge. Burris v. Burris (In re Burris), 598 B.R. 315, 333 (Bankr. W.D. Okla. 2019) (citing Grogan, 498 U.S. at 287). Many of the subsections of Section 523(a) aim to prevent discharge of debts involving a debtor's unacceptable conduct, such as dishonesty, fraud, or intentional injury, with the policy goal of Section 523(a)(6) being to encourage lawful behavior by excepting from discharge any debt owed as a result of morally reprehensible conduct. Hoffman v. Anstead (In re Anstead), 448 B.R. 202, 207 (Bankr. N.D. Ohio 2011) (citing O'Brien v. Sintobin (In re Sintobin), 253 B.R. 826, 831 (Bankr. N.D. Ohio 2000); Landry v. Dunlop (In re Dunlop), No. 05-1202-JMD, 2006 WL 3827417, at *4 (Bankr. D. N.H. Dec. 27, 2006)).

Notwithstanding its laudable purpose, the exception to discharge under Section 523(a)(6) must be narrowly construed with doubt being resolved in the debtor's favor. Cobra Well Testers, LLC v. Carlson (In re Carlson), 2008 WL 8677441, at *2 (10th Cir. Jan. 23, 2008); Bellco First Fed. Credit Union v. Kaspar (In re Kaspar), 125 F.3d 1358, 1361 (10th Cir. 1997); Burris, 598 B.R. at 333. And the creditor seeking to except a debt from discharge bears the burden of proving each element of its claim by a preponderance of the evidence. Grogan, 498 U.S. at 286; Hagmaier v. Cooley (In re Cooley), 551 B.R. 498, 505 (Bankr. W.D. Okla. 2016); Diamond v. Vickery (In re Vickery), 526 B.R. 872, 880 (D. Colo. 2015) (citing Holaday v. Seay (In re Seay), 215 B.R. 780, 785 (10th Cir. BAP 1997)); Bartley v. Jacobson (In re Jacobson), 485 B.R. 255, 263 (Bankr. D. Kan. 2013) (citing Grogan, 498 U.S. at 286).

I.    **SECTION 523(a)(6) EXCEPTS FROM DISCHARGE DEBTS RESULTING FROM WILLFUL AND MALICIOUS INJURY BY A DEBTOR.**

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  To prevail under Section 523(a)(6), a creditor must prove both a willful act ***and*** a malicious injury.  Panalis v. Moore (In re Moore), 357 F.3d 1125, 1129 (10th Cir. 2004); First Am. Title Ins. Co. v. Smith (In re Smith), 618 B.R. 901, 912 (10th Cir. BAP 2020); Reperex, Inc. v. May (In re May), 579 B.R. 568, 593 (Bankr. D. Utah 2017) (citing Moore, 357 F.3d at 1129); Tulsa Spine Hosp., LLC v. Tucker (In re Tucker), 346 B.R. 844, 853 (Bankr. E.D. Okla. 2006).  Thus, an intentional tort is required, and debts resulting from recklessness or negligence are not within the scope of Section 523(a)(6).  Barenberg v. Burton (In re Burton), 2010 WL 3422584, at *6 (10th Cir. BAP Aug. 31, 2010) (citing Kawaauhau v. Geiger, 523 U.S. 57, 64 (1998)).

For an injury to be willful, there must be a deliberate or intentional injury, not merely a deliberate or intentional action leading to an injury.  Smith, 618 B.R. at 912 (citing Geiger, 523 U.S. 57).  This description generally encompasses intentional torts, which require the actor intend the consequences of his act and not simply the act itself.  Smith, 618 B.R. at 912 (citing Geiger, 523 U.S. 57).  "A willful injury may be established by direct evidence that the debtor acted with the specific intent to harm a creditor or the creditor's property, or by indirect evidence that the debtor desired to cause the injury or believed the injury was substantially certain to occur."  Smith, 618 B.R. at 912 (citing In re Longley, 235 B.R 651, 657 (10th Cir. BAP 1999)).  "The Tenth Circuit applies a subjective standard in determining whether a defendant desired to cause injury or believed the injury was substantially certain to occur."  Utah Behavior Serv. Inc. v. Bringhurst (In re Bringhurst), 569 B.R. 814, 823 (Bankr. D. Utah 2017) (citing Via Christi

-9-

Reg'l Med. Ctr. v. Englehart (In re Englehart), 2000 WL 1275614, 229 F.3d 1163 (10th Cir.

Sept. 8, 2000) (noting the willful and malicious injury exception focuses on the debtor's state of

mind)); Smith, 618 B.R. at 912.

For an injury to be malicious, "'evidence of the debtor's motives, including any claimed

justification or excuse, must be examined to determine whether the requisite 'malice' in addition

to 'willfulness' is present.'" Smith, 618 B.R. at 919 (quoting Dorr, Bentley & Pecha, CPA's,

P.C. v. Pasek (In re Pasek), 983 F.2d 1524, 1527 (10th Cir. 1993)).

> All the surrounding circumstances, including any justification or
> excuse offered by the debtor, are relevant to determine whether the
> debtor acted with a culpable state of mind vis-a-vis the actual
> injury caused the creditor.  A willful and malicious injury requires
> more than negligence or recklessness. . . . For an injury to be
> "malicious," therefore, the debtor's actions must be wrongful. . . .
> In summary, the totality of the circumstances must be examined to
> determine if a wrongful state of mind was present in [Debtor] when
> he caused injury to [Plaintiff].

Smith, 618 B.R. at 919-20 (citations omitted).  "For a debtor's actions to be malicious, they have

to be intentional, wrongful, and done without justification or excuse." Bertone v. Wormington

(In re Wormington), 555 B.R. 794, 800 (Bankr. W.D. Okla. 2016) (first citing Fletcher v.

Deerman (In re Deerman), 482 B.R. 344, 370 (Bankr. D. N.M. 2012); and then citing Tso v.

Nevarez (In re Nevarez), 415 B.R. 540, 544 (Bankr. D. N.M. 2009) ("'Malicious' requires that an

intentional act be 'performed without justification or excuse.'")); AVB Bank v. Costigan (In re

Costigan), 2017 WL 6759068, at *5 (Bankr. E.D. Okla. Dec. 29, 2017).  "Malice may be implied

where the preponderance of the evidence establishes that the debtor committed acts that were

'wrongful and without just cause.'" Costigan, 2017 WL 6759068, at *5 (citing Maxfield v.

Jennings (In re Jennings), 670 F.3d 1329, 1334 (11th Cir. 2012)).

To establish Defendant's willful and malicious intent in this adversary proceeding, Plaintiff relies first on the State Court Judgments and the doctrine of issue preclusion, formerly known as collateral estoppel,[6] and second on the evidence presented at trial herein. Defendant, in contrast, attacks the State Court Judgments, claiming the State Court erred both procedurally and in its fact findings. The Court first addresses Defendant's attack on the State Court Judgments, then application of issue preclusion, and finally the evidence before the Court.

## II.    *ROOKER-FELDMAN* PREVENTS COLLATERAL ATTACK ON THE STATE COURT JUDGMENTS.

In the Pretrial Order, Defendant claims she (i) did not participate in Plaintiff's beating and (ii) would have participated in the trial in the State Court Action had she been notified her attorney withdrew from the case or was served papers regarding the trial. Although not crystal clear, Defendant's claims certainly can be viewed as attacking the propriety and validity of the State Court Judgments. This Court, however, is not the proper court to determine such claims under what is referred to as the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine states "federal courts lack subject-matter jurisdiction to review final state court judgments." Young v. Rogers (In re Young), 2018 WL 4616228, at *2 (Bankr. W.D. Okla. Sept. 24, 2018) (citing Bear v. Patton, 451 F.3d 639, 641 (10th Cir. 2006)). "Stated another way, the *Rooker-Feldman* doctrine bars 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Farris v. Burton, 686 F. App'x 590, 591-92 (10th Cir. 2017) (quoting Exxon Mobil Corp. v.

---

[6]The Tenth Circuit refers to collateral estoppel as issue preclusion and res judicata as claim preclusion.

-11-

<u>Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005)). Importantly, though the *Rooker-Feldman* doctrine bars collateral attacks on state court judgments, it does not supplant the normal rules of preclusion. <u>Hof v. Caswell</u> (<u>In re Caswell</u>), 605 B.R. 401, 410 (Bankr. M.D. N.C. 2019) (citing <u>Sartin v. Macik</u>, 535 F.3d 284, 287 n. 1 (4th Cir. 2008)).

   *Rooker-Feldman* bars Defendant's collateral attacks on the State Court Judgments. <u>Bednar v. RCB Bank</u> (<u>In re Bednar</u>), 2019 WL 3928844 (10th Cir. BAP 2019). The *Rooker-Feldman* doctrine precludes a losing party in state court from bringing a case seeking review and rejection of a state court judgment in federal court, precisely what Defendant requests here. <u>Bednar</u>, 2019 WL 3928844 (citing <u>Miller v. Deutsche Bank Nat'l Tr. Co.</u> (<u>In re Miller</u>), 666 F.3d 1255, 1261 (10th Cir. 2012)). "[F]ederal courts do not have jurisdiction to modify or set aside a state court judgment because the state proceedings should not have led to that judgment. Only final state court judgments and orders are entitled to preclusive effect under *Rooker-Feldman*." <u>Bednar</u>, 2019 WL 3928844 (citing <u>Mayotte v. U.S. Bank Nat'l Ass'n , as Tr. for Structured Asset Inv. Loan Tr.  Mortg. Pass-Through Certificates, Series 2006-4</u>, 880 F.3d 1169, 1170 (10th Cir. 2018)); <u>MacIntyre v. JP Morgan Chase Bank, N.A.</u> (<u>In re MacIntyre</u>), 2020 WL 1651619, at *7 (10th Cir. BAP Apr. 3, 2020)).

   Here, the State Court Judgments are final judgments of the State Court, Defendant having not appealed the State Court Judgments and the time for appeal having expired. <u>Bednar</u>, 2019 WL 3928844, at *7; <u>In re Kramer</u>, 614 B.R. 899, 908 n.50 (Bankr. N.D. Okla. 2020) (citing <u>Nealis v. Baird</u>, 1999 OK 98, 996 P.2d 438) (a final judgment is one for which no appeal has been filed within the time allowed by law or one in which an appeal has been timely filed and acted upon by the highest court whose review is sought). Consequently, the State Court

Judgments have preclusive effect to which this Court must give effect notwithstanding Defendant's claims the State Court Judgments are incorrect because Defendant did not participate in the Beating or invalid because Defendant did not receive notice of the trial and/or the withdrawal of her counsel in the State Court Action. *Rooker-Feldman* requires these claims to be addressed to the State Court. Hill v. Putvin (In re Putvin), 332 B.R. 619, 624 (10th Cir. BAP 2005) (citing Exxon Mobil Corp., 544 U.S. 280); Skinner v. Lesh (In re Lesh), 253 B.R. 849, 853-54 (Bankr. N.D. Ohio 2000) (when a defendant raises as defenses that a state court judgment should be vacated for errors in law and set aside because defendant did not have a full and fair opportunity to litigate the state court action, regardless of the merits of such arguments, the defendant's proper recourse is to seek redress from the applicable state courts, be it through vacation, modification or reconsideration of the state court judgment by the state trial court or appeal to higher courts).

The Court now turns to Plaintiff's reliance on the State Court Judgments to establish a willful and malicious injury under Section 523(a)(6).

## III.   ISSUE PRECLUSION CAN BE USED IN DETERMINING DISCHARGEABILITY.

The doctrine of issue preclusion bars relitigation of determinations necessary to the ultimate outcome of a prior proceeding. Bobby v. Bies, 556 U.S. 825, 834 (2009). Issue preclusion prevents a party that has lost the battle over an issue in one lawsuit from relitigating the same issue in another lawsuit. Melnor, Inc. v. Corey (In re Corey), 583 F.3d 1249, 1251 (10th Cir. 2009). Issue preclusion may be invoked to preclude relitigation of factual issues underlying a determination of dischargeability. Nelson v. Tsamasfyros (In re Tsamasfyros), 940 F.2d 605, 606 (10th Cir. 1991); Grassmann v. Brown (In re Brown), 570 B.R. 98, 112

(Bankr. W.D. Okla. 2017); C & L Supply, Inc. v. Morrow (In re Morrow), 613 B.R. 786, 805 (Bankr. N.D. Okla. 2020).

The Full Faith and Credit Statute, 28 U.S.C. § 1738, directs federal courts to look to the preclusion law of the state in which a judgment is rendered. Cobb v. Lewis (In re Lewis), 271 B.R. 877, 883 (10th Cir. BAP 2002) (citing Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985)). In Oklahoma, issue preclusion may be invoked where a court has decided an issue of fact or law necessary to its judgment to prevent the same parties or their privies from relitigating that issue in a subsequent suit brought upon a different claim. Oklahoma Dep't of Public Safety v. McCrady, 2007 OK 39, ¶ 7, 176 P.3d 1194, 1199 (2007); Miller v. Miller, 1998 OK 24, ¶ 25, 956 P.2d 887, 897. A party seeking to invoke issue preclusion "must show that the issue sought to be precluded was actually litigated and determined in the prior action . . . and that the determination was essential to the decision in the prior action." Miller, 956 P.2d at 897. An issue is actually litigated and necessarily determined only if: (i) it is properly raised in pleadings or otherwise submitted for determination in a prior action; and (ii) judgment would not have been rendered but for the determination of that issue. McCrady, 176 P.3d at 1199 (2007) (citing State ex rel. Oklahoma Bar Ass'n v. Giger, 2004 OK 43, ¶ 13, 93 P.3d 32, 38 (2004)).

Oklahoma courts require a party relying on issue preclusion to "produce–as proof of its terms, effect and validity–the *entire* judgment roll[7] for the case which culminated in the decision

---

[7]The judgment roll includes the petition, the process, return, pleadings subsequent thereto, reports, verdicts, orders, judgments and all material acts and proceedings of the court. Salazar v. The City of Oklahoma City, 1999 OK 20, ¶ 11, 976 P.2d 1056, 1061; Genoff Farms, Inc. v. Seven Oaks South, LLC, 2011 OK CIV APP 29, ¶ 14, 249 P.3d 526, 530 (judgment roll is the

(continued...)

invoked as a bar to relitigation." Salazar v. The City of Oklahoma City, 1999 OK 20, ¶ 11, 976 P.2d 1056, 1061. Without the judgment roll, no court can determine with the requisite degree of certainty what claims were pressed for adjudication and which of the tendered issues were actually submitted and decided. Salazar, 976 P.2d at 1061-62. Oklahoma bankruptcy courts recognize that the party seeking to rely on a judgment for preclusive force has the obligation to produce the entire judgment roll for the case in which the judgment was entered. Brown, 570 B.R. at 113; Hall v. Bolton (In re Bolton), 2017 WL 535265, at *2 (Bankr. E.D. Okla. Feb. 9, 2017); Factoring of Oklahoma, L.L.C. v. Means (In re Means), 2006 WL 2847903, at *5, n.12 (Bankr. N.D. Okla. Oct. 5, 2006) (citing Gouskos v. Griffith, 122 F. App'x 965, 974 (10th Cir. 2005)); Witaschek v. Sacramento Cty. Bureau of Family Support (In re Witaschek), 276 B.R. 668, 676 (Bankr. N.D. Okla. 2002); Marks v. Hentges (In re Hentges), 373 B.R. 709, 726, n.13 (Bankr. N.D. Okla. 2007); Cook v. Hill, 169 F. App'x 513, 517 (10th Cir. 2006) (Tenth Circuit recognized that failure to submit the entire judgment roll from previous litigation in subsequent civil action is fatal to issue preclusion). Plaintiff provided the judgment roll; however, no transcript of the jury trial was provided and made reviewing the proceedings for issue preclusive effect more difficult.

In this case, issue preclusion establishes a willful and malicious injury only if Defendant's willfulness and maliciousness – as defined by 523(a)(6) – were actually litigated and necessarily decided in the State Court. Although the State Court Judgments were actually litigated, the State

---

(...continued)
same as the record and is made up of the petition, process, return, the subsequent pleadings, reports, verdicts, orders, judgments and all material acts and proceedings of the court); Mahmoodjanloo v. Mahmoodjanloo, 2007 OK 32, ¶ 12, 160 P.3d 951, 958, n.8.

Court did not decide the issue of willfulness. The issue of maliciousness, however, was necessarily decided and, therefore, issue preclusion establishes maliciousness.

### A. The State Court Judgments were Actually Litigated for the Purpose of Issue Preclusion.

The State Court entered the Liability Judgment against Defendant and in favor of Plaintiff as a sanction for Defendant's failure to cooperate in discovery and comply with an order of the State Court. Plaintiff Ex. 1, State Court Action Journal Entry of Judgment entered December 18, 2015. The Liability Judgment recognizes Defendant did not appear at the hearing on the motion to impose sanctions and continued to fail to cooperate with her attorney in satisfying her discovery obligations after being notified by court order that a judgment on the issue of liability would be entered against Defendant if she failed to respond to the discovery requests. Plaintiff Ex. 1, State Court Action Journal Entry of Judgment entered December 18, 2015. The Liability Judgment enters judgment against Defendant for liability only. Defendant never appealed the Liability Judgment and never sought to vacate or have the Liability Judgment reconsidered. Thus, it is a final judgment.

At first glance, Defendant's liability for the injuries arising from the Beating of Plaintiff does not appear to have been actually litigated. However, a party may be estopped from requiring the "actually litigated" element of issue preclusion be met where a default judgment is entered against such party as a sanction or penalty, as was the case with Defendant. Melnor, Inc. v. Corey (In re Corey), 394 B.R. 519, 527-28 (10th Cir. BAP 2008), aff'd, 583 F.3d 1249 (10th Cir. 2009); Zilm v. Roberts (In re Roberts), 505 B.R. 555, 567-68 (Bankr. N.D. Okla. 2014). The Liability Judgment was entered as a sanction for discovery abuse and failure to comply with an order of the State Court. Since Defendant deliberately obstructed the progress of

-16-

the State Court Action, she effectively waived the "actually litigated" element of issue preclusion.

Similarly, Defendant raised her absence from the jury trial on damages and punitive damages multiple times before and during the trial before this Court. However, this does not render the Damages Judgment a default judgment. Rather, Defendant filed an answer and participated in the State Court Action. She was represented by counsel until immediately before the damages trial. The issue of damages was presented to a jury with presentation of evidence by Plaintiff at a trial which Defendant chose not to attend. An actual trial was conducted, and the jury returned a verdict in favor of Plaintiff for actual and punitive damages having found Plaintiff satisfied the applicable burden of proof. Defendant had every opportunity to participate in the pre-trial proceedings as well as the jury trial in the State Court Action. Her failure to actively participate does not negate the fact that the trial occurred, and the Damages Judgment and Costs Judgment were awarded against her.

Because Defendant had a fair opportunity to litigate all issues in the State Court Action but elected not to fully participate, the Court concludes the issue of Defendant's liability and damages was actually litigated. Martin v. Phillips, 2018 OK 56, ¶ 3, 422 P.3d 143, 145.

**B.      Issue Preclusion Does Not Establish That Defendant's Conduct Was Willful under Section 523(a)(6) Because a Different Definition of Willful Was Used in the State Court Action.**

"'[N]on-dischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.'" Moore, 357 F.3d at 1129 (quoting Geiger, 523 U.S. at 61). "The Tenth Circuit follows a subjective standard in determining whether a defendant desired to cause injury or believed the injury was substantially certain to occur." Al Lado

Cambio De Cheques, Inc. v. Reyes (In re Reyes), 2020 WL 4006376, at *9 (Bankr. W.D. Okla. July 15, 2020) (citing Englehart, 2000 WL 1275614, at *3 (10th Cir. 2000) ("[T]he 'willful and malicious injury' exception to dischargeability in § 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur.")); Ford v. Landon (In re Landon), 619 B.R. 727, 735 (Bankr. N.D. Okla. 2020).  The question is whether the jury found Defendant possessed the requisite intent, i.e. the intent to cause injury or belief the injury was substantially certain to occur, in the State Court Action.

The Damages Judgment in favor of Plaintiff and against Defendant provides as follows:

1.    $350,000 for actual damages for Defendant's (among others) acts against Plaintiff.

2.    $100,000 for punitive damages.

The jury instructions given in the State Court Action provide punitive damages can be awarded if Defendant "acted in reckless disregard of the rights of others and/or acted intentionally and with malice towards others."  Plaintiff Ex. 1, State Court Action Jury Instruction No. 10.  Per the Damages Judgment, the jury found Defendant "acted with reckless disregard for the rights of others and intentionally and with malice towards others."  Plaintiff Ex. 1, State Court Action Journal Entry of Judgment for Damages, p. 2.[8]  The jury instructions instructed the jury in the State Court Action that Defendant's conduct was in reckless disregard of Plaintiff's rights if Defendant was "either aware, or did not care, that there was a substantial and unnecessary risk

_____

[8]At the damages trial, the burden of proof on punitive damages was by clear and convincing evidence, a standard higher than the preponderance of the evidence standard in this adversary proceeding.  World Wide Ass'n of Speciality Programs v. Pure, Inc., 450 F.3d 1132, 1139 (10th Cir. 2006) (recognizing that preponderance of the evidence is a lower evidentiary standard than clear and convincing);  In re Tomasini, 339 B.R. 773, 781 (Bankr. D. Utah 2006).

that [her] conduct would cause serious injury to" Plaintiff.  Plaintiff Ex. 1, State Court Action Jury Instruction 10.

While the Damages Judgment against Defendant finds Defendant **acted** in reckless disregard, debts arising from reckless or negligently inflicted injuries do not fall within the compass of Section 523(a)(6).  Glencove Holdings, LLC v. Bloom (In re Bloom), 622 B.R. 366, 436 (Bankr. D. Colo. 2020).  "'Willful' injury is a higher standard than 'reckless' or 'negligent' injury."  Bloom, 622 B.R. at 436 (citing Geiger, 523 U.S. at 61); Kanaga v. Landon (In re Landon), 2020 WL 4658284, at *7 (Bankr. N.D. Okla. Aug. 11, 2020).  "[A]s noted in Geiger and countless subsequent lower court decisions, neither negligence, recklessness, nor reckless disregard rise to the standard of intent required by § 523(a)(6)."  Landon, 2020 WL 4658284, at *7 (first citing Geiger, 523 U.S. at 64 ("We hold that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."); then citing TKC Aerospace Inc. v. Muhs (In re Muhs), 923 F.3d 377, 385 (10th Cir. 2019); then citing B.B. v. Bradley (In re Bradley), 466 B.R. 582, 588 (1st Cir. BAP 2012) ("The majority of courts that have considered the issue have concluded that a state court judgment that could have been based on reckless disregard is not the equivalent of the substantial certainty required by § 523(a)(6)."); then citing Williams v. Int'l Brotherhood of Electrical Workers Local 520 (In re Williams), 337 F.3d 504, 508 (5th Cir. 2003); then citing Kennedy v. Mustaine (In re Kennedy), 249 F.3d 576, 580 (6th Cir. 2001); and then citing Lockerby v. Sierra, 535 F.3d 1038, 1041 (9th Cir. 2008)) (other citations omitted).  To the extent the jury found Plaintiff's injuries were recklessly or negligently inflicted, the damages arising therefrom do not fall within the scope of Section 523(a)(6).  Bloom, 622 B.R. at 436.

Jury Instruction No. 10 also provided for damages if Defendant's conduct was "unreasonable under the circumstances, and . . . there must have been a high probability that the conduct would cause serious harm to another person."  Plaintiff Ex. 1, State Court Action Jury Instruction 10.  The problem with this instruction which ultimately prevents application of issue preclusion as to whether Defendant's conduct was "willful" is Section 523(a)(6)'s requirement of an intent to cause the injury and not merely an intent to act.  Cognizance of a foreseeable risk, high probability, or substantial likelihood of an injury does not equate to a substantial certainty an injury will be caused.  Martinez v. Angel Exploration, LLC, 798 F.3d 968, 982 (10th Cir. 2015); Price v. Howard, 2010 OK 26, ¶ 10, 238 P.3d 82, 88 (Okla. 2010); Harris v. Kamps (In re Kamps), 575 B.R. 62, 73 (Bankr. E.D. Penn. 2017) ("A strong probability that harm may result is not enough to establish a willful injury under § 523(a)(6)."); Kaminski v. Danese (In re Danese), 2013 WL 1163780, at *3 (Bankr. D. N.J. Mar. 20, 2013) ("A 'high degree of probability' standard, however, is a lower threshold than 'substantially certain' standard and therefore cannot be applied to sustain a claim under 11 U.S.C. § 523(a)(6).").  "An intentional tort, by contrast, requires a desire to cause an injury or at least the knowledge that such injury 'was substantially certain to result.'"  Molitor v. Mixon, 2016 WL 9050778, at *3 (W.D. Okla. November 21, 2016).  The Court concludes the necessary intent to injure required by Section 523(a)(6) was not at issue in the State Court Action which required only a high probability of serious harm to Plaintiff rather than the required substantial certainty.

Thus, issue preclusion cannot be applied to establish Defendant's willful intent to injure under Section 523(a)(6).

**C.    The Finding of Malice in the State Court Action is Entitled to Preclusive Effect.**

Malice requires conduct that is wrongful and without just cause or excuse.  AVB Bank v. Costigan (In re Costigan, 2017 WL 6759068, at *5 (W.D. Okla. December 29, 2017) (citing Jennings, 670 F.3d at 1334); Wormington, 555 B.R. at 800 (first citing Fletcher v. Deerman, 482 B.R. 344, 370 (Bankr. D. N.M. 2012); and then citing Tso v. Nevarez, 415 B.R. 540, 544 (Bankr. D. N.M. 2009)).  Malice under Section 523(a)(6) does not require a finding that the debtor was motivated by spite or hatred.  Steward Software Co., LLC v. Kopcho (In re Kopcho), 2014 WL 3933657, at *6 (Bankr. D. Colo. Aug. 12, 2014) (first citing Old Republic National Title Ins. Co. v. Levasseur (In re Levasseur), 737 F.3d 814, 818 (1st Cir. 2013); then citing Jennings, 670 F.3d at 1334; and then citing Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006).  Personal malevolence toward the plaintiff is also not necessary to establish malice.  Tinker v. Colwell, 193 U.S. 473, 485 (1904).  Thus, "'malice may be found either upon a finding of actual malevolence or ill will, or upon a finding of aggravated, socially reprehensible conduct sufficient to justify an imputation of malice to the debtor.'"  Forrest v. Bressler (In re Bressler), 387 B.R. 446, 454–55 (Bankr. S.D. N.Y. 2008) (quoting Bundy Am. Corp. v. Blankfort (In re Blankfort), 217 B.R. 138, 146 (Bankr. S.D. N.Y. 1998)); Rentrak Corp. v. Strait (In re Strait), 2015 WL 757628, at *13 (Bankr. D. Vt. Feb. 20, 2015).

The jury instruction in the State Court Action provides malice "involves either hatred, spite, or ill-will, or else the doing of a wrongful act intentionally without just cause or excuse." Plaintiff Ex. 1, State Court Action Jury Instruction 10.  Based on such instruction, the jury in the State Court Action found Defendant acted intentionally and with malice towards others. Plaintiff Ex. 1, State Court Action Journal Entry of Judgment for Damages entered on

December 14, 2018, p. 2. Such finding is consistent with the standard for malice under Section 523(a)(6).

As the issue of Defendant's malice was actually litigated and established in the State Court Action, such finding is binding on this Court under the principles of issue preclusion. Therefore, Plaintiff established a malicious injury under Section 523(a)(6) via issue preclusion.

## IV. PLAINTIFF'S EVIDENCE PROVED BY A PREPONDERANCE OF THE EVIDENCE THAT THE STATE COURT JUDGMENTS SHOULD BE EXCEPTED FROM DEFENDANT'S DISCHARGE UNDER SECTION 523(a)(6).

Though willfulness was not established through issue preclusion, it was established by Plaintiff's evidence presented at trial. As stated above, willfulness under 523(a)(6) is a subjective standard and focuses on Defendant's state of mind; Defendant must have "wished to cause injury or at least believed it was substantially certain to occur." Reyes, 2020 WL 4006376, at *9 (citing Englehart, 2000 WL 1275614, at *3). At trial, Plaintiff met her burden of proving by a preponderance of the evidence that Defendant acted willfully, i.e., that she intended the injury itself to occur.

Plaintiff and Husband spent the evening at GCS, keeping their distance from Defendant and her friends because of their acrimonious relations and requests from GCS management. Late in the otherwise uneventful evening, Plaintiff and Husband left GCS to go home. Defendant, who was also at GCS, followed Plaintiff and Husband to their vehicle. Once at the vehicle, Defendant and her friends pulled Plaintiff from the vehicle, threw her to the ground, punched her in the face and stomach, and kicked her recently healed knee. Plaintiff heard Defendant say "get her knee," knowing it was only three months since surgery thereon. Defendant's actions demonstrate she intended the physical harm that occurred; it is nonsensical to conclude she

-22-

punched and kicked Plaintiff without the intent to physically injure her. Defendant intended the injury itself, and thus acted willfully within the scope of Section 523(a)(6).

Similarly, these facts establish malice. Although malice has already been established through application of issue preclusion, the evidence presented at trial also satisfied Plaintiff's burden of proof of establishing malice by a preponderance of the evidence in the absence of issue preclusion. The attack was unprovoked and not in response to anything Plaintiff did or said, and Defendant, in no way, acted in self-defense in participating in the Beating. Absolutely no evidence exists in the record suggesting the Beating can be justified or excused, and it certainly was not justified or excused. Rather, Defendant's actions of stalking Plaintiff as she was leaving GCS, pulling her out of her vehicle, and assaulting her for no apparent reason other than dislike or hate, establish the requisite malice required by Section 523(a)(6).

Defendant's participation in the Beating was motivated by spite and ill-will and clearly without any justification or excuse. Plaintiff, therefore, established Defendant acted with malice in the Beating.[9]

---

[9] "'[N]o other conclusion could possibly be reached other than [defendant] intended to hit [plaintiff], therefore the act was willful, and by hitting [plaintiff], intended to harm her, making the act 'malicious' within the meaning of that statute because it was 'targeted at the creditor,' [plaintiff].'" Green v. Olson (In re Olson), 333 B.R. 835, 838 (Bankr. D. Minn. 2003) (quoting Siemer v. Nangle (In re Nangle), 274 F.3d 481, 484 (8th Cir. 2001).

As the Court concludes Defendant acted both willfully and maliciously in attacking and injuring Plaintiff, the State Court Judgments[10] are excepted from Defendant's discharge pursuant to Section 523(a)(6).

**CONCLUSION**

For the reasons set forth above, the State Court Judgments are excepted from Defendant's discharge pursuant to Section 523(a)(6).

IT IS SO ORDERED.

#   #   #

---

[10]Plaintiff is entitled to have all of the State Court Judgments excepted from Defendant's discharge as the compensatory damages, punitive damages, and costs are all awarded as a result of the injuries suffered by Plaintiff from the Beating.  Dardinger v. Dardinger (In re Dardinger), 566 B.R. 481, 503 (Bankr. S.D. Ohio 2018) (citing Cohen v. de la Cruz, 523 U.S. 213, 219 (1998) (holding that, in addition to any amount actually obtained by fraud, the "full liability traceable to that sum," including any liability for items such as treble and punitive damages, attorneys' fees and costs, also is nondischargeable); HER, Inc. v. Barlow (In re Barlow), 478 B.R. 320, 333–34 (Bankr. S.D. Ohio 2012) (applying Cohen to debt excepted from discharge by § 523(a)(6)).